UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 5:26-cv-3499-RAO Date: August 28, 2026
Title: Chenglong Weng v. Markwayne Mullin et al.

Present: The Honorable **ROZELLA A. OLIVER, U.S. MAGISTRATE JUDGE**

| | |
|---|---|
| C. Delgado | N/A |
| Deputy Clerk | Court Reporter/Recorder: N/A |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| N/A | N/A |

**Proceedings:** (In Chambers) **ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Chenglong Wong, a noncitizen currently in immigration custody, entered this country in March 2023, seeking asylum. Dkt. No. 1 ("Pet.") at 4, 7. After entering the United States and being initially detained, Petitioner was later released under one of two statutes – 8 U.S.C. §§ 1226(a)(2) or 1182(d)(5)(a). *Id*. at 7-8. After his release, Petitioner was ordered to regularly report to Immigration and Customs Enforcement ("ICE"). *Id*. at 8. In August 2025, ICE detained Petitioner. *Id*. at 8.

On June 25, 2026, represented by counsel, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See generally* Pet. The Petition alleges that Petitioner's current detention violates his substantive and procedural due process rights, the Fourth Amendment protections against unreasonable seizures, and the Administrative Procedure Act. *Id*. at 8, 11, 25, 27-30. The Petition seeks relief in the form of ordering Petitioner's immediate release from custody and reinstatement of the status quo prior, and an order that Petitioner may not be re-detained unless Respondents prove by clear and convincing evidence that there has been a material change in circumstances and Petitioner's continued release would pose a danger to the community or a flight risk. *Id*. at 30.

Respondents filed their Answer on July 2, 2026, and attached the Form I-213. Dkt. No. 7 ("Ans."); Dkt. No. 7-1. The Answer states that Petitioner is a citizen of the People's Republic of China, who entered the United States without admission or parole. Ans. at 2. Petitioner was served with a Notice to Appear ("NTA") pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)—a noncitizen present

without admission or parole. *Id.* Petitioner was ordered removed in absentia in October 2023, although Petitioner later filed a motion to reopen and for a change of venue, which was granted in December 2023. Petitioner was arrested in April 2025 for "POSS STLN PROP VEH" in violation of California law. *Id.* Petitioner's request for change of venue was granted in July 2025 and Petitioner's next scheduled hearing before EOIR is for March 6, 2028. *Id.* On August 28, 2025. immigration authorities arrested Petitioner as part of a targeted enforcement operation to locate him at a state courthouse. *Id.* Petitioner was served with a *Bautista* Class Notice on February 23, 2026. *Id.* While noting that Petitioner has been detained for over 11 months, Respondents argue that this time period does not constitute prolonged detention. *Id.* at 3. Rather, Respondents assert that the remedy appropriate here is providing Petitioner with a bond hearing pursuant to Section 1226(a). *Id.* at 4. Lastly, Respondents contend that Petitioner's request for conditions to be imposed prior to any re-detention (if Petitioner is released) should be rejected. *Id.* at 4-5.

Petitioner filed a Reply on July 6, 2026. Dkt. No. 9 ("Reply"). The Reply argues first that, because Petitioner was not convicted of the criminal offense noted in the Form I-213, there was no reason for Petitioner to be detained by immigration authorities. *Id.* at 3. Petitioner states that detention beyond six-months has been recognized as unconstitutional. *Id.* Next, the Reply asserts that Petitioner is not a member of the *Baustista* class. *Id.* at 3-4. In support, Petitioner points to Immigration Judge Barrett's December 11, 2025, order regarding a request for a competency inquiry for Petitioner, wherein it is noted that the immigration court must schedule a bond hearing that complies with the requirements under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *See* Dkt. No. 2-4 at 4. The Reply does state that Petitioner is entitled to a bond hearing under *Rodriguez v. Robbins*, and Petitioner requested such a hearing on June 24, 2026, but to date no hearing has been scheduled. Reply at 4.

A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *see Magan Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) (Section 2241 "expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.") (citing *Henderson v. I.N.S.*, 157 F.3d 106, 122 (9th Cir. 1998)).

The Court concludes that Petitioner is entitled to a bond hearing. The parties disagree as to whether the hearing is pursuant to *Bautista* or *Rodriguez*. Because Petitioner has been detained

for almost one year, the Court need not decide whether Petitioner is a member of the *Bautista* class because the Court finds that Petitioner's continued detention without a bond hearing violates due process.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "It is well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citation omitted). Due process protections extend to noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent," and those subject to a final order of deportation. *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690. The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Although the government may have discretion over the initial decision to detain or release a noncitizen, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that noncitizen may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). The Court analyzes each step in turn.

Here, Petitioner was issued an NTA in March 2023 and subsequently released after being initially detained by immigration authorities. Pet. at 7-8. Before his arrest in August 2025, Petitioner lived in the United States. As has been detailed by this and numerous other courts,

individuals released from ICE custody have a protected interest in remaining out of custody. *See Lopez v. Lyons*, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Noori v. LaRose*, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal.").

Given Petitioner's protected liberty interest, the Court must determine what procedural protections are due to protect that liberty interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This requires balancing the three factors the Supreme Court set forth in *Mathews*. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*.

Like many courts in this district, the Court applies the test from *Mathews* to determine whether due process requires a bond hearing that Petitioner seeks. The first *Mathews* factor weighs in Petitioner's favor—he has a fundamental liberty interest in remaining free from unreasonable imprisonment. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the hearing of the liberty" that the Due Process clause protects). Petitioner has been detained for almost one year. Courts have deemed this period to be a materially significant length of time. *See, e.g., Amado v. United States Dep't of Justice*, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable").

The second *Mathews* factor—the risk of erroneous deprivation—is significant because Petitioner has not been afforded a meaningful opportunity to contest his current detention. *See Diep v. Wofford*, 2025 WL 604744, at *5 (E.D. Cal. Feb. 25, 2025) (concluding that the risk of an erroneous deprivation of Petitioner's protected liberty interest "is high" where "[h]e has not received any bond or custody redetermination hearing" (citing *Jimenez v. Wolf*, No, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020)). Additionally, there is no evidence that Respondents employed any procedural safeguards before detaining petitioner and revoking his release. Indeed, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No.: | 5:26-cv-3499-RAO | Date: | August 28, 2026 |
| Title: | Chenglong Weng v. Markwayne Mullin et al. | | |

received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 25-107-KES (SKO), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (citation omitted); *Juarez Fernandez v. Semaia*, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Given the absence of any procedural safeguards to determine if Petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5. The additional procedure of a bond hearing would mitigate the risk of erroneous deprivation of Petitioner's liberty as it would require the government to establish that Petitioner presents a flight risk or danger to the community. *See Doe*, 787 F. Supp. 3d at 1094 ("At a hearing, a neutral decisionmaker can consider all of the facts and evidence before him to determine whether Petitioner in fact presents a risk of flight or dangerousness. The reliability and significance of the alleged changes in circumstance that Respondents identify can be weighed and Petitioner's liberty interests can be protected."). As such, the second *Mathews* factor weighs in Petitioner's favor because the risk of erroneous deprivation of Petitioner's liberty is high.

With respect to the third factor, Respondents' interest in re-detaining Petitioner without notice and a hearing is low. Respondents do not identify any fiscal or administrative burdens on the government that a hearing would entail. District courts have observed that bond hearings impose minimal burden on the government. *See Singh v. Barr*, 400 F. Supp. 3d 1005, 1021–22 (S.D. Cal. 2019); *Hilario M.R. v. Warden*, 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025)). The Court acknowledges that the government has a strong interest in effecting removal. *Demore v. Kim*, 538 U.S. 510, 531 (2003). However, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020). Providing a bond hearing would not undercut the government's interest in effecting removal, rather, the bond hearing will illuminate whether Petitioner represents a flight risk or danger to the community. After all, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The third *Mathews* factor weighs in Petitioner's favor.

In light of the undeniable liberty interest at stake, the profound risk of erroneous deprivation, and Respondents' failure to show a significant interest in Petitioner's detention,

Petitioner is entitled to more process than he received. *See Mathews*, 424 U.S. at 335. On balance, the Court concludes that the *Mathews* factors militate in favor of a finding that Petitioner is entitled to a bond hearing before a neutral arbiter in which the government shall bear the burden of establishing that Petitioner poses a danger to the community or risk of flight. *Doe*, 787 F. Supp. 3d at 1096 (ordering the government to provide a post-deprivation bond hearing to a detainee where the government bears the burden of proof); *see Carballo*, 2025 WL 2381464, at *8 (similar)

As noted, Petitioner requests that the Court order his immediate release, however, the Court finds that the specific harm Petitioner suffered—unlawful detention without a pre-deprivation hearing—is remedied by ordering Respondents to provide Petitioner a bond hearing. *See S.E. v. Noem*, 2026 WL 206085, at *4 n. 3 (E.D. Cal. Jan. 27, 2026) ("Based on the court's *Mathews* analysis, the court has determined that a post-deprivation bond hearing is the appropriate remedy at this stage of these proceedings."); *see also Doe*, 787 F. Supp. 3d at 1096 (similar).

Thus, the Court GRANTS IN PART the Petition as to Counts Two (procedural due process) and Five (prolonged detention without process) and dismisses the remaining counts as moot.

The Court ENJOINS Respondents from continuing to detain Petitioner unless Petitioner is provided with a bond hearing before an immigration judge within ten days of this Order in which the government shall bear the burden of establishing that Petitioner poses a danger to the community or risk of flight by clear and convincing evidence.[1]

Further, Respondents are ORDERED to file a status report within 14 days attesting to compliance with the Court's order.

**IT IS SO ORDERED.**

[1] The Court finds Petitioner's argument that immigration judges are biased and under pressure to rule against non-citizens in bond hearings to be conclusory and unsupported by the record.